Kossuth, Appellee, *v.* Bear, Appellant.[*]

(No. 22757—Decided June 1, 1953.)

_Messrs. Harrison, Spangenburg & Hull_ and _Mr. Oliver W. Hasenflue,_ for appellee.

_Mr. William M. Byrnes_ and _Mr. William A. Kane,_ for appellant.

---

[*]Reversed on other grounds, _Kossuth_ v. _Bear,_ 161 Ohio St., 378.

220

SKEEL, J. This appeal comes to this court on questions of law from a judgment entered for plaintiff in the Common Pleas Court of Cuyahoga County. The action is one in negligence.

On May 30, 1948, the plaintiff was a passenger in a westbound automobile on Lake Road in Avon Lake, Lorain County. The driver pulled into the middle traffic lane and stopped behind the automobile driven by the defendant, both drivers intending to make a left turn into an outdoor moving picture theater located on the south side of the road. Lake Road at this point is a three-lane highway.

After some eastbound traffic had passed, the defendant started to make his left-hand turn when he was struck by an approaching eastbound automobile, which, after colliding with defendant's automobile, swerved into the automobile in which plaintiff was a passenger, whereby she was injured. The plaintiff's petition alleges that defendant's negligence in turning in front of an eastbound automobile was the proximate cause of her injuries.

At the time of the accident, the defendant lived on Maple Cliff Drive with his parents at stop 55 in Avon Lake. He was then attending Fenn College under G. I. privileges and in his registration at the college he gave Avon Lake as his residence. He transferred to Dyke-Spencerian School located in the Standard Building on Ontario Avenue near Public Square, in September 1948 and was in attendance there for two school years, that is, until June 20, 1950. He was married on August 20, 1949, at Lakewood Methodist Church. After his marriage he moved from Avon Lake to a room on the third floor of a rooming house known as 1417 East 85th Street, Cleveland, Ohio, where they lived for about a month. This room was rented by defendant's wife prior to their marriage. The defendant then moved to 1851 East 82nd Street

where he lived until moving to California in August or September 1950. During some part of the time he was at Dyke-Spencerian School he worked for the Typewriter Supply Company, 1745 Euclid Avenue.

From a judgment entered for the plaintiff, the defendant claims the following errors:

1. The court's charge relating to the statute of limitations was prejudicial to the rights of the defendant.

2. There is no credible evidence of the absence of defendant from the state or an attempt to conceal himself to avoid service.

3. The court erred in refusing to submit interrogatories.

4. The court erred in the rejection and admission of evidence.

An examination of the record discloses circumstances which strongly favor the plaintiff's right to recover. As above indicated, the plaintiff was a passenger in an automobile standing perfectly still in the middle lane of a three-lane highway, waiting to make a left-hand turn. The defendant, who was just ahead of this automobile, cut in front of oncoming traffic whereby the automobile moving in the opposite direction struck the rear of defendant's automobile and then deflected into the automobile in which plaintiff was seated. The defendant pleaded guilty to a charge of careless driving, thus admitting negligence and the record is clear that such negligence was a proximate cause of the injuries sustained by plaintiff in the collision. The defendant, as a witness (testimony taken by deposition), was far from frank on some subjects and his general attitude in refusing to answer questions was most reprehensible.

But neither the facts of the accident nor the indefensible conduct of defendant are involved in the legal questions here presented. A court should not permit bad facts to influence it in considering disassociated

legal questions. Here, the question is one dealing with a statute of limitations (Section 11224-1, General Code) and circumstances which toll the operation of the statute (Section 11228, General Code). Except as to the claim of the plaintiff that defendant was absent from the state on his honeymoon and on two or three short skiing trips and a vacation trip in June 1950 and the plaintiff's further claim of his general conduct as tending to establish concealment to avoid service of summons, from the date of the accident (May 30, 1948) until he left for California in August or September 1950, the facts are matters of record. The plaintiff filed her action in Cuyahoga County on April 4, 1949. Defendant's address was given as "Cleveland, Ohio" when there was absolutely no dispute about the fact that defendant then lived in Avon Lake on Maple Cliff Drive, Lorain County, with his father and stepmother. An alias summons was issued on May 29, 1950, but no address was furnished. No further attempt to obtain service on defendant was made in this action until November 1, 1950, when an amended petition was filed alleging absence from the state and concealment as tolling the statute of limitations under Section 11228, General Code, and instructions given to the clerk to serve defendant through the Secretary of State under the provisions of Section 6308-1, General Code. The defendant was then living in California.

Another action was filed on May 29, 1950, in Lorain County by plaintiff, setting forth the same allegations as were contained in the action filed in Cuyahoga County on April 4, 1949. Service was attempted at the home of defendant's father on Maple Cliff Drive, Avon Lake, Lorain County. At this time defendant, having been married on August 20, 1949, had moved from that address and was living with his wife at 1851 East 82nd Street, Cleveland, Cuyahoga County, Ohio, so that service was returned "not found." It should be noted

that this petition was filed just within the two-year period of the statute of limitations.

In the file of the sheriff of Lorain County, after attempting the service of summons, was a notation that the defendant had moved to 1851 East 82nd Street, Cleveland, and while residence service in this action could not be had because his residence was then in Cuyahoga County, yet, under the provisions of Section 6308, General Code, the Common Pleas Court of that county was vested with jurisdiction of the cause, and under Section 11231, General Code, had 60 days in which to complete service after the filing of the action within the two-year period under the statute of limitations. Nothing was done after the sheriff made return, "I did not service Richard R. Bear as he could not be found within our county," so that the case was dismissed by the court "no service" on September 1, 1950.

In addition to filing a new case in Lorain County on May 29, 1950, defendant could have been brought into court in a Cuyahoga County case by residence service any time within 60 days after May 30, 1950. An alias summons was issued in the Cuyahoga County case on May 29, 1950, but no address was given.

The first question to consider is whether absences of the defendant from the state after May 30, 1948, on pleasure trips while he maintained his residence in Ohio, tolled the statute of limitations under the provisions of Section 11228, General Code. The plaintiff's contention is that there is evidence in the record tending to support her claim that defendant was absent from the state for two weeks after August 20, 1949, while on his honeymoon, two or three times before his marriage for two or three days, skiing in Pennsylvania, and a two- or three-week trip after graduating from Dyke-Spencerian College. There is conflict about defendant's honeymoon trip. He testified that he spent his honeymoon at Vista Villa, Port

Clinton, Ohio. His father testified that he thought defendant went to Pennsylvania and the New England States. The father's testimony is without any probative value as it is hearsay, the witness giving no facts upon which to base his opinion. The skiing trips likewise have no support, the testimony being of the same character; so that there is no credible evidence that defendant was out of the state until after he graduated from Dyke-Spencerian College. The plaintiff fixes this trip to Pennsylvania and the New England States as of June 1, 1950, thirty days after the statute of limitations had run. This must be an error, however, because the record is undisputed that defendant was not graduated until June 20, 1950, as shown by the school records.

But even if it should be admitted that defendant was, on a few occasions, out of the state on pleasure trips, such absence did not toll the statute of limitations under the provisions of Section 11228, General Code.

That section provides in part:

"* * * After the cause of action accrues if he *departs* from the state, or absconds or conceals himself, the time of his absence or concealment shall not be computed as any part of a period within which the action must be brought." (Emphasis added.)

Such absences as are shown by the evidence were temporary in character with no intention on the part of defendant to disturb or change his place of residence or depart from the state, so that service of process could have been made upon him at his usual place of residence as provided by Section 11286, General Code, at any time during the two-year period after May 30, 1948. We hold that such absences did not toll the statute.

The legal effect of temporary absence from the state of a resident, for purposes of business or pleasure,

with respect to whether such absence will toll statutes of limitations under the provisions of Section 11228, General Code, has never been directly determined or referred to in the decided cases of this state, except for a sentence in the opinion of the court in the case of *Title Guaranty & Surety Co.* v. *McAllister,* 130 Ohio St., 537, 546, 200 N. E., 831, hereinafter referred to. The cases thus far decided deal with the question of whether the saving provision of Section 11228, General Code, is or is not applicable as to a cause of action against a nonresident where other means of acquiring jurisdiction sufficient to authorize the rendition of a personal judgment are available.

The first case dealing with this question is *Stanley* v. *Stanley, Admr.,* 47 Ohio St., 225, 24 N. E., 493, 21 Am. St. Rep., 806, 8 L. R. A., 333. This was an action on a claim against decedent's estate which had been disallowed by the administrator. At the time when several of the causes of action accrued defendant resided in West Virginia, but on many occasions he had come into this state on visits of which plaintiff had knowledge and thus made himself available for personal service. The court held:

"1. Where a person, who is a nonresident of this state and absent from it when a cause of action accrues against him in favor of another in this state, afterwards, and during the period of the limitation, occasionally comes into this state, such presence in the state will not set the statute of limitations to running in his favor, although the plaintiff might, at such times, by the exercise of ordinary diligence, have commenced an action against him.

"2. Under the provisions of Section 4989, Revised Statutes, presence of the defendant in the state, for the full period of the time limited for bringing an action, either continuously or in the aggregate, is necessary to constitute a bar of the action."

It must be noticed, however, that Chief Justice Minshall said on page 229:

"But if, after he comes into the state, he again depart from it, the running of the statute is suspended during his absence. *It is not necessary that we should determine in this case, whether absence upon business —the defendant continuing a resident of the state—is sufficient, or whether it must be limited to absence as a nonresident of the state, for it is admitted that the decedent was a resident of the state of West Virginia, and his absence, therefor, referable to that fact.*" (Emphasis added.)

In the first part of the quotation, the court used the words, "he again depart from it," as meaning to leave intending to take up residence elsewhere. In all events, the Supreme Court eliminated from this case the very question now presented for determination.

The next Supreme Court case is *Commonwealth Loan Co., Inc.,* v. *Firestine,* 148 Ohio St., 133, 73 N. E. (2d), 501, 172 A. L. R., 993. There, the defendant "departed this state" after the cause of action on a promissory note accrued. The obligation was evidenced by a cognovit note. The defendant departed this state by moving to Chicago, Illinois, becoming an elector of that city and state. It was argued that because plaintiff could take judgment by confession that the time of his residence in Chicago would not toll the statute of limitations as provided by Section 11228, General Code.

The court held:

"The Ohio promisee and holder of a cognovit note executed in Ohio, suing thereon, may invoke the saving provision of Section 11228, General Code, against the promisor who had left the state of Ohio and had become a resident of another state for a period of years, notwithstanding such absent promisor had executed a warrant of attorney to confess judgment on the note

whereby personal judgment could have been rendered against him in Ohio without service of summons, in an action commenced within the 15-year limitation prescribed by Section 11221, General Code.''

It is clear that this case deals with the nonresidence of the defendant and not temporary absence.

The next case is *Couts* v. *Rose,* 152 Ohio St., 458, 90 N. E. (2d), 139. There, the defendant was involved in an automobile collision with the plaintiff in Trumbull County. Action was brought within the two-year period of the statute of limitations (Section 11224-1, General Code), attempting service on the defendant in Mahoning County under the provisions of Section 6308, General Code. In the meantime, the defendant had moved to New York and summons was returned ''not found'' with the notation, ''Lives in New York.'' Service was then had on the Secretary of State under the provisions of Section 6308-1, General Code, which service was after the two-year period of limitations provided by Section 11224-1, General Code.

The court held:

''A person injured in an automobile collision occurring in this state is not obliged to institute his action for his injury against a nonresident defendant and secure service through Section 6308-1, General Code, within the time limitation provided by Section 11224-1, General Code, but under favor of the provisions of Section 11228, General Code, he may proceed to institute his action through Section 6308-1, General Code, at any time before the defendant returns to the state.''

The only question decided there is whether the passage of Section 6308-1, General Code, whereby service upon a nonresident defendant upon which a personal judgment could be had, had the effect of eliminating from the plaintiff's rights the benefits of Section 11228, General Code. The court held that even though a personal judgment could be had by service of summons

through the Secretary of State, such right did not deprive plaintiff of his right to wait until defendant returned to this jurisdiction as was true before the passage of Section 6308-1, General Code. This case, as is true of the others, deals with defendants who are or have become nonresidents of the state.

The latest case on this subject is *Meekison, Admr., v. Groschner,* 153 Ohio St., 301, 91 N. E. (2d), 680, 17 A. L. R. (2d), 495. There, again the defendant was a nonresident. He owed a debt on a promissory note made due and payable at Napoleon, Ohio. The defendant at all times lived in Michigan.

The court held, as shown in the second paragraph of the syllabus:

"Where the obligor of a promissory note, payable to a resident of Ohio at his place of residence, is and has been continuously absent from the state of Ohio, Section 11228, General Code, applies and the period of limitation for the commencement of an action against the obligor after default of his obligation does not begin to run until he comes into the state, whether his absence resulted from his leaving the state after he executed the promissory note or from his nonresidency of the state at the time of such execution."

From the foregoing authorities, it must be found that the question of whether the temporary absence of a resident of this state has the effect of tolling the statute of limitations during such absence where, during the time of his absence, service could be had upon him and upon which a personal judgment could be had in a proper case has not been decided.

In viewing these authorities they must be considered in the light of the facts upon which they are founded. In the very recent case of *State* v. *Nickles,* 159 Ohio St., 353, at page 359, 112 N. E. (2d), 531, the court said, in dealing with a question of statutory interpretation as

found in the syllabus of *State* v. *Edwards,* 157 Ohio St., 175, 105 N. E. (2d), 259:

"That paragraph of the syllabus would seem to justify the Court of Appeals in the action it took in the present case. However, this court has decided many times that although the syllabus of a case states the law of that case, it must be read with reference to the facts thereof. *Baltimore & Ohio Rd. Co.* v. *Baillie,* 112 Ohio St., 567, 148 N. E., 233; *Williamson Heater Co.* v. *Radich,* 128 Ohio St., 124, 190 N. E., 403. See, also, cases cited in 11 Ohio Jurisprudence, 798, Section 145."

It must be noted that in the case of *Title Guaranty & Surety Co.* v. *McAllister, supra,* the Supreme Court said on page 546, in considering Section 11228, General Code:

"As a fair proposition the test of the running of the statute should be the liability of the party invoking its bar to the service of process during the whole of the period prescribed. If such process can be served during that time, and a personal judgment obtained, such party is not 'out of the state' or 'concealed' within the meaning of Section 11228, General Code."

Statutes of limitation are a very necessary part of the law of our times. Their universal adoption in every state of the Union bespeaks their importance. As was said by this court in *Commonwealth Loan Co.* v. *Firestine,* 72 N. E. (2d), 912 (affirmed 148 Ohio St., 133, 73 N. E. (2d), 501, *supra*):

" 'Statutes of limitation are statutes of repose and are designed to secure the peace of society.' 25 Ohio Jurisprudence, 422.

"Their object is to require vigilance in litigating claimed rights and to provide against fraudulent claims being asserted after the passing of time would make such claim difficult to defend."

The saving clause of the limitation statutes (Section

11228, General Code) was passed to prevent a person from shielding himself from the ordinary processes of the law. If one seeks to avoid service or places one self beyond its jurisdiction, certainly the creditor or claimant should be protected. The Legislature intended to go no further than was necessary to prevent necessary rules from being improperly used. In the part of the section here being considered, they used the words, "depart this state," intending to mean a far greater degree of permanence in going away than is to be understood by the word, "absence," as is to be found by the definition of these words in Webster's Dictionary. A pilot working for a commercial air line, whose job requires him to "absent" himself from the state most of his working day, but who is a resident of Cleveland, maintaining his home and family here, sending his children to our schools, paying taxes here, and exercising his rights of citizenship here, as do the rest of us, would be surprised to learn that as to him the statute of limitations meant four years or more in a personal injury action, or 30 years or more as to an obligation evidenced by writing, while his neighbor is relieved of defending state claims in a much shorter period of time. Many other such persons such as railroad employees, truck drivers, salesmen, and people who live along the borders of the state and work in an adjoining state but who at all times are subject to civil process in Ohio, are in the same position as the commercial pilot.

The cases in other jurisdictions which hold to the contrary are for the most part to be distinguished by the wording of the statutes being considered. In *Parker* v. *Kelly,* 61 Wis., 552, 21 N. W., 539, where a master of a vessel was out of the state engaged in his work for two years, although he maintained his residence in the state at all times and where the court held that his absence tolled the statute of limitations, the words of the

saving provisions there considered were, "while he shall be out of the state." The case of *Schneider* v. *Schneider,* 82 Cal. App., (2d), 860, 187 P. (2d), 459, under a statute very similar to ours, held that business absence tolled the time within which action could be brought. But it must be noticed that on page 862 of the report the court said:

"The reasons for the absence of the debtor from the state are immaterial. The important thing is that the debtor is absent from the state and *cannot be served with a complaint and summons for the purpose of conferring upon the court jurisdiction to enter a personal judgment against him."* (Emphasis added.)

The court then proceeded to say that as an appellate court it was bound by the decisions of its Supreme Court.

Hence, cases from other states which state a contrary rule relied on by the plaintiff are of no value in deciding the question presented to us. Such cases cited by the plaintiff are: *Sage* v. *Hawley,* 16 Conn., 106, 41 Am. Dec., 128; *Dorus* v. *Lyon, Exrx.,* 92 Conn., 55, 101 A., 490; *Blodgett* v. *Utley,* 4 Neb., 25; *Webster* v. *Citizens' Bank of Omaha,* 2 Neb. (Unof.), 353, 96 N. W., 118; *Aronow* v. *Bishop,* 112 Mont., 611, 120 P. (2d), 423; *Barney* v. *Oelrichs,* 138 U. S., 529, 11 S. Ct., 414, 34 L. Ed., 1037.

In 94 A. L. R., 485 (in an annotation following the case of *Bode* v. *Flynn,* 213 Wis., 509, 252 N. W., 284, in which case the court held the statute of limitations was tolled against a nonresident in an automobile negligence action regardless of the ability of plaintiff to get service on him through the Secretary of State, a case similar to and holding the same as our Supreme Court in *Couts* v. *Rose, supra*), at page 486, the author says:

"On the theory that the purpose of these provisions is to prevent the defendant from defeating the plain-

tiff's claim by merely absenting himself from the state or establishing a residence elsewhere for the period of limitation, many courts, giving a liberal construction to the statute, have, where its terms would not be plainly violated by such construction, adhered to the view that where, notwithstanding such absence or nonresidence, process could have been served in the state to enable the plaintiff to institute an action upon his claim, the period of the defendant's absence from the state shall not be excluded from the period of limitation, and the statute continues to run during such absence.''

The rule as thus stated is supported by the majority of the courts of last resort of the several states. Certainly saving clauses to statutes of limitation should not be extended by judicial construction beyond what is clearly intended by the Legislature and necessary to preserve the rights of the parties.

We must conclude, therefore, that what little evidence there is tending to establish the defendant's absence from the state did not tend to show an intention on his part to ''depart this state.'' From the face of the record, the defendant was within the jurisdiction of the courts of either Lorain County or Cuyahoga County for the full period of the statute of limitations, which, as a matter o: law, was not tolled because of such temporary absence as may have been shown and, therefore, the court's charge that the absence claimed, if established, would toll the statute of limitations was in error.

It is next claimed that the defendant concealed himself so that service of summons could not be made upon him. This is a question of fact which was properly submitted to the jury. As has been stated, the accident happened on May 30, 1948. This action was filed April 4, 1949. Between those dates no claim of concealment is made nor could there be, because no action

had been filed. In considering the evidence on the subject of concealment, some of which is hereafter briefly detailed, it must be kept in mind that there is not the slightest suggestion that the defendant was advised that an action had been filed against him until after May 29, 1950. The first claim of an attempt to conceal himself to avoid service has to do with moving into his wife's apartment, which was rented in her name before the defendant and his wife were married. It is further claimed that the failure of the defendant to have his name on the outer door of the rooming house constitutes some evidence of concealment. Evidence was also introduced tending to show that he was not listed in the Cleveland directory or telephone book, and that when he moved to 1851 East 82nd Street his employer noted his change of address from Avon Lake, which was correctly noted, to 1581 East 82nd Street which was, of course, incorrect. This was the mistake of the employer and it should be noted in passing that the plaintiff made the identical mistake in her brief on page 19. Other evidence on this subject had to do with defendant's automobile being registered in his father's name, and that it was not transferred to the defendant's name until just before he left for California. Other testimony relied upon was that the defendant, when his deposition was being taken in California, refused to answer certain questions which were thought to have some importance on the subject of absence or concealment. His conduct in this regard was most reprehensible but adds little weight to the question of either concealment or absence. It is also claimed that he left no forwarding address when he moved to California. On this point, there is no evidence that he knew where he would be. In this connection it should also be noted that when service was had upon him through the Secretary of State, the sheriff mailed a registered letter to his last known address,

1851 E. 82nd Street, Cleveland, Ohio. Service was made on the Secretary of State on November 4. The return made November 12 shows that a signed receipt for the registered letter was made a part of the return and the defendant thus having notice of the suit filed a motion to quash on December 15, so that the registered letter must have reached him without delay.

Concealment sufficient to toll the statute of limitations under the provisions of Section 11228, General Code, must consist of conduct purposely conceived of and acted upon to prevent service of summons, such conduct being reasonably capable of accomplishing such purpose. When all of the plaintiff's evidence is considered in the light of the undisputed facts, that the defendant continued to live with his father and step-mother just as he had done before May 30, 1948, until his marriage on August 20, 1949, that he then lived and worked in Cleveland under no different circumstances than do thousands of others and during all of the time in question attended college under G. I. rights, missing only 17 days during the two-year period, the records of the schools attended containing full, complete and accurate information about him, including various addresses, any finding that concealment has been established is manifestly against the weight of the evidence.

The error claimed by the defendant that evidence of the defendant's plea of guilty to careless driving in the Municipal Court of Lorain on a charge filed against him as a result of the accident here being considered is not well taken. Such judicial confession was admissible and the defendant having testified that he entered such plea of guilty to the charge makes unimportant the manner in which the plaintiff attempted to bring such fact into the record.

We hold also that the court correctly refused to submit interrogatories presented by the defendant on the

authority of *Ford Motor Co.* v. *Dillon,* 51 Ohio App., 278, 200 N. E., 525. We hold further that no prejudicial error was committed in the admission or rejection of evidence.

One further question is clearly presented upon the record in this case. Section 11233, General Code, in part provides:

"In an action commenced, *or attempted to be commenced,* * * * if the plaintiff fails otherwise than upon the merits, and time limited for the commencement of such action at the date of reversal or failure has expired, the plaintiff * * * may commence a new action within one year after such date * * *." (Emphasis added.)

Sections 11231 and 11233, General Code, being a part of the same chapter and relating to the same subject are *in para materia.*

Under Section 11233, General Code, in an action commenced, or "attempted to be commenced" the one year provision applies. By Section 11231, General Code, "an attempt to commence" an action shall be deemed equivalent to its commencement, where the party diligently endeavors to procure service, if such "attempt" be followed by service within 60 days. It will be seen that both of these sections make a distinction between attempting to commence an action and the commencement thereof.

The terms, "attempt to commence," an action, and, "diligent endeavor to procure a service," are construed in *Baltimore & Ohio Rd. Co.* v. *Ambach,* 55 Ohio St., 553, 45 N. E., 719, and *McLarren* v. *Myers, Admr.,* 87 Ohio St., 88, 100 N. E., 121, and it is held that the issuance of a summons answers both requirements. Thus in the case of *McLarren* v. *Myers, Admr.,* the court in considering the case of *Ross, Sheriff,* v. *Willet,* 54 Ohio St., 150, 42 N. E., 697, said at page 95:

"The court held that the party had shown a com-

pliance with the statute, because he 'attempted to commence his proceeding, by filing his petition and causing a summons to be issued in proper time' although the service proved ineffectual. It must be noted, that the saving provision in Section 11231 relates only to the diligent endeavor to procure service. The language of the statute is, 'when a *party* diligently endeavors to procure service.'

"If a party had caused a summons to be issued, there can be a diligent effort to procure its service, but, of course, there can be no such endeavor where no summons has issued."

On May 29, 1950, which was within two years of the date of the injuries sustained by the plaintiff (Section 11224-1, General Code), the plaintiff filed her action in Lorain County as she had a right to do under the provisions of Section 6308, General Code. This action was dismissed *by the court* for want of service on September 1, 1950, which was after the statute of limitations had run. While the words, "dismissed without prejudice," are contained in the entry, yet it is clear from the face of the record that the dismissal was the act of the court and was not made at the request of the plaintiff, so that the cases which hold that if the plaintiff voluntarily dismisses his action without prejudice the foregoing statute does not apply (*Siegfried* v. *New York, Lake Erie & Western Rd. Co.,* 50 Ohio St., 294, 34 N. E., 331), are not applicable here.

Thereafter, in the action filed in Cuyahoga County on April 4, 1949, to which county the defendant moved and began his residence on August 20, 1949, and in which action a praecipe for service was issued on May 29, 1950, so that here there was also an attempt to bring an action, and in a county in which residence service could be made after August 20, 1949, and, under the provisions of Section 11277, General Code, Cuyahoga County was then a proper county within

which to bring such action. Service having failed, however, after the statute of limitations had run, and the defendant had left the state, it was proper for plaintiff to commence an action within one year from September 1, 1950. The fact that such action was commenced by filing an amended petition in an action previously filed wherein service had failed and had not been perfected within 60 days after the running of the statute is of no consequence (Sections 11230 and 11231, General Code).

In the case of *Templeman* v. *Hester,* 65 Ohio App., 62, 29 N. E. (2d), 216, the court held in effect that the spirit of Section 11233, General Code, is that where an action *would* fail otherwise than on its merits, the plaintiff shall have one year in which to reassert it, and if the original action is still pending and there is no reason for not asserting in that action it may be so asserted just as effectively as it could in a new action.

This action which was commenced in a proper county was reasserted within one year after the plaintiff's claim had failed otherwise than on the merits, and such act of reasserting the action was therefore not barred by the statute of limitations.

Upon a consideration of the whole record (the court being vested with jurisdiction of the defendant by virtue of Sections 11233 and 6308-1, General Code), it is the conclusion of this court that substantial justice has been afforded both parties and, therefore, the judgment is affirmed.

*Judgment affirmed.*

HURD, P. J., and KOVACHY, J., concur.

HURD, P. J., concurring. I concur in the affirmance of the judgment for the further reason that an examination of the record discloses evidence sufficient to justify the action of the trial court in submitting to the

jury for determination as a matter of fact the issue of whether the defendant was absent from the state and concealed with respect to his whereabouts for a period of time sufficient to permit the prosecution of the case under the provisions of Section 11228, General Code. The issue having been properly submitted, and the evidence on the subject of absence and concealment being in dispute, the finding of the jury in favor of the plaintiff must be sustained by this court on review.