GEORGE DALITION ET AL., APPELLANTS, V. LEON E. LANGEMEIER AND ROCK COUNTY LAND CO., A NEBRASKA PARTNERSHIP, APPELLEES.

524 N.W.2d 336

Filed December 2, 1994.    No. S-93-860.

Bruce H. Brodkey, of Brodkey & Cuddigan, and William T. Brooks, of Brooks & Hess, for appellants.

Michael L. Schleich and Roger L. Shiffermiller, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellees.

HASTINGS, C.J., WHITE, CAPORALE, LANPHIER, and WRIGHT, JJ., and BOSLAUGH, J., Retired.

CAPORALE, J.

## I. STATEMENT OF CASE

Plaintiffs-appellants, George Dalition, W. Roger Curry, and Janette Maskell, allege that the defendants-appellees, Leon E. Langemeier and Rock County Land Co., a Nebraska partnership, breached the parties' contract, failed to render an accounting, and perpetrated a constructive fraud. The defendants demurred on grounds which include the claim that the suit is time barred. Concluding that the long-arm statutes,

Neb. Rev. Stat. §§ 25-535 through 25-541 (Reissue 1989), rendered the tolling statute, Neb. Rev. Stat. § 25-214 (Reissue 1989), inapplicable to the circumstances presented, the district court found that the suit was filed out of time. The court therefore sustained the defendants' demurrer and dismissed the petition. Plaintiffs appealed. We granted their motion to bypass the Nebraska Court of Appeals and now affirm the judgment of the district court.

## II. SCOPE OF REVIEW

In considering a demurrer, a court must assume that the pleaded facts, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *First Nat. Bank in Morrill v. Union Ins. Co., ante* p. 636, 522 N.W.2d 168 (1994).

## III. FACTS

In addition to being supplied with the petition and other papers filed with the clerk of the district court, we have been provided with a purported bill of exceptions containing several exhibits. It is certified to be "correct and complete" and to contain "all matters required to be included . . . pursuant to . . . the rules of the Supreme Court of the State of Nebraska . . . ." Contrary to that certification, the fact is that the purported bill of exceptions does not comply with our rules.

Among other things, Neb. Ct. R. of Prac. 5F(1) (rev. 1992) and Neb. Ct. R. of Official Ct. Rptrs. 19f(1) (rev. 1992) require that a bill of exceptions contain an index showing not only where exhibits may be found, but where they were marked, offered, and ruled upon. The rules thus require that a bill of exceptions recite at the appropriate pages of the body thereof the marking and offering of an exhibit and the ruling made thereon. Not only does the purported bill of exceptions supplied in this case not contain an index, it tells nothing about how the exhibits got before the district court. Nonetheless, it is apparent from the recitations in the district court's ruling that the exhibits did come to its attention in some fashion and that it

did consider them.

Under other circumstances, such a purported bill of exceptions in and of itself might well doom an appellant's cause. But in this instance, neither the imperfections in the preparation of the bill of exceptions nor the false certification affects the adjudication.

This is so, for while in ruling on a demurrer a court may take judicial notice of its own record in an interwoven and interdependent action it previously adjudicated, *Association of Commonwealth Claimants v. Moylan, ante* p. 88, 517 N.W.2d 94 (1994), a demurrer otherwise goes only to those defects in pleading which appear on the face of the petition, *Pappas v. Sommer*, 240 Neb. 609, 483 N.W.2d 146 (1992), and those documents attached to and made a part of it, *Horton v. Ford Life Ins. Co., ante* p. 171, 518 N.W.2d 88 (1994). Therefore, in considering the exhibits contained in the purported bill of exceptions, the district court erred as did the trial court in *Pappas* when, in ruling on a motion it treated as a demurrer, it considered a bankruptcy court filing which had not been made a part of the *Pappas* petition.

We thus limit ourselves to the facts as alleged in the petition plaintiffs filed on March 31, 1993, and the various documents attached to and made a part of it. It appears therefrom that on December 30, 1980, Langemeier, Dalition, Curry, and Maskell's predecessor in interest entered into a partnership agreement for the purpose of owning and operating agricultural properties and businesses.

Langemeier then assigned to the partnership 2 sections of land in Rock County, Nebraska, which he had purchased a few months earlier. In exchange for the investments made by Dalition and Curry, Maskell's predecessor and Langemeier agreed that upon 90 days' prior notice, they would repurchase the lands from the partnership on or before December 31, 1982.

On September 27, 1982, Dalition and Curry made written demand upon Maskell's predecessor and Langemeier to repurchase the lands. Maskell's predecessor died on October 20, and, in accordance with the partnership agreement, Maskell succeeded as a partner to her predecessor's interest. Langemeier refused to repurchase the lands. (No allegations are made

concerning the role of Maskell's predecessor with respect to the nonrepurchase of the lands, nor are any allegations specifically directed to the partnership's conduct.)

From and after December 1, 1980, Langemeier has acted as the sole officer, manager, operator, and bookkeeper for the partnership and has failed to render to plaintiffs an accounting of the partnership activities, notwithstanding that an accounting was repeatedly sought beginning some time prior to September 27, 1982.

Langemeier also failed to disclose to the others the material facts with regard to his dealings with the partnership and has in a variety of ways acted not in the best interests of the partnership but in his own best interests, which actions include the conversion and appropriation to himself and for his benefit proceeds from the sale of partnership grain. Foreclosure of the mortgages on the lands was commenced on or about June 21, and title in said lands was taken by the mortgagee.

## IV. ANALYSIS

Plaintiffs concede that but for the tolling statute, each of their causes would be time barred—the contract cause by no later than December 27, 1987, the accounting cause by no later than March 12, 1988, and the fraud cause by no later than March 12, 1987. Thus, we conduct no independent examination as to when, if the tolling statute does not apply, plaintiffs' causes became time barred.

Plaintiffs also recognize that a petition which makes apparent on its face that the cause of action it asserts is ostensibly barred by the statute of limitations fails to state a cause of action and is demurrable unless the petition alleges some excuse which tolls the operation and bar of the statute. See, *Upah v. Ancona Bros. Co., ante* p. 585, 521 N.W.2d 895 (1994); *Calvert v. Roberts Dairy Co.,* 242 Neb. 664, 496 N.W.2d 491 (1993). Plaintiffs' contention is that the petition alleges an excuse for failing to file the suit within the applicable periods of limitation by averring that Langemeier "was a resident of the State of Nebraska until January, 1985, at which time he departed the State of Nebraska and became, and has since been, a resident of the State of Montana" and that the

partnership is a Nebraska entity which "no longer has an office nor does business in the State of Nebraska." Plaintiffs postulate therefrom that the time elapsing from and after January 1985 is not to be counted, making their March 31, 1993, petition timely as to each of their causes.

Plaintiffs' contention that their suit is not time barred is grounded in the language of the tolling statute, § 25-214:

> If, when a cause of action accrues against a person, he is out of the state, or shall have absconded or concealed himself, the period limited for the commencement of the action shall not begin to run until he comes into the state, or while he is absconded or concealed; and if, after the cause of action accrues, he departs from the state, or absconds or conceals himself, the time of his absence or concealment shall not be computed as any part of the period within which the action must be brought.

However, the district court reasoned that because of the interplay between the tolling statute and the long-arm statutes, plaintiffs' allegations with respect to the departures of Langemeier and the partnership from Nebraska provide no excuse which tolls the operation and bar of the various periods of limitations otherwise applicable to plaintiffs' causes.

The long-arm statutes declare in § 25-537 that when the "exercise of personal jurisdiction is authorized" by other provisions, "service may be made outside this state."

Section 25-536 provides:

> A court may exercise personal jurisdiction over a person:
>
> (1) Who acts directly or by an agent, as to a cause of action arising from the person:
>
> (a) Transacting any business in this state;
>
> . . .
>
> (c) Causing tortious injury by an act or omission in this state;
>
> . . .
>
> (e) Having an interest in, using, or possessing real property in this state . . . [.]

Section 25-535 defines person as including an individual and a partnership.

The longest applicable period of limitations is 5 years. Neb. Rev. Stat. §§ 25-205, 25-207, and 25-212 (Reissue 1989). Thus, by virtue of plaintiffs' concession that if the tolling statute does not apply all of their causes become time barred by no later than March 12, 1988, it necessarily follows that everything they complain about took place prior to 1985 and that the causes of action thus arose by virtue of the transaction of business in this state, by virtue of acts and omissions in this state, or by virtue of having been an interest in real property in the state.

While plaintiffs characterize the issue concerning the meaning of the phrase "shall have absconded or concealed himself" in the tolling statute as one of first impression in this state, such proves not to be the case. The reality is that the issue was first considered by this court almost 120 years ago in *Blodgett v. Utley*, 4 Neb. 25 (1875). Therein, the judgment creditor obtained a foreign judgment but failed to bring an action thereon in this state until after the 5-year period of limitations had expired. At various times during that 5-year period, the debtor had been temporarily absent from Nebraska, but at all times during his absences maintained in Nebraska a usual place of residence where service of personal process could have been had.

Nonetheless, under a tolling statute which in relevant parts then read as does the current such statute, the *Blodgett* trial court concluded that the action was not time barred and entered judgment in favor of the creditor.

In reversing the trial court, this court wrote:

> It is clear that if we are to be governed by the strict literal language of the statute, that the several periods of absence of the [judgment debtor] from the state, must be deducted from the five years and ten months during which he has resided in this state, in which case the action is not barred. Do the words "depart from the state," as used in [the statute], mean a mere temporary absence from the state while the debtor's usual place of residence is here, or are they intended to apply to such an absence from the state as entirely suspends the power of the plaintiff to commence his action? We think it was the intention of the legislature to give the creditor five full years to commence

his action, and if during that period, the right to proceed in our courts to reduce the claim to judgment is suspended by reason of the absence or concealment of the debtor, the period of *such* absence should not be computed as any part of the time within which an action may be brought. It is one of the grounds for attachment under our code that the debtor "so conceals himself that summons cannot be served upon him," and it is evident that the reason of suspension of the statute of limitations, in case of concealment, is because service of summons cannot be had on the debtor in consequence thereof.

(Emphasis in original.) *Id.* at 29. The *Blodgett* court also reasoned that the tolling statute was designed to protect the rights of a claimant in those cases where it was not practicable for one to enforce one's rights by suit; however, justice and propriety did not require that the court interpret the tolling statute to include periods of time when the debtor "was personally out of the state, but during which the [creditor] might notwithstanding have commenced a personal action" against the debtor. *Id.* at 30.

The *Blodgett* court specifically rejected the creditor's argument that mere absence from the state was sufficient to toll the statute of limitations. Therefore, *Blodgett* teaches that the tolling statute does not suspend the statute of limitations when one is absent from the state but nonetheless remains amenable to the service of personal process.

This court reaffirmed that rule in *Seymour v. Street*, 5 Neb. 85 (1876), citing *Blodgett* for the proposition that absence from the state, as contemplated by the tolling statute, meant that period in which the right to proceed in court and reduce the claim to judgment was suspended. Similarly, *Talcott v. Bennett*, 49 Neb. 569, 68 N.W. 931 (1896), held that concealment or absconding as used within the tolling statute meant such absence from the state as affects the commencement of judicial proceedings in Nebraska. Again, in *Omaha & Florence L. & T. Co. v. Parker*, 33 Neb. 775, 51 N.W. 139 (1892), this court held that in order to suspend the statute of limitations under the tolling statute, it is necessary that the absence from the state be such that it prevents a claimant from bringing an action against

the absent person.

In *Webster v. Citizens Bank of Omaha*, 2 Neb. (Unoff.) 353, 96 N.W. 118 (1902), this court again declared that when considering whether the tolling statute should suspend a statute of limitations, the important practical question was whether one was within reach of process in the state. The *Webster* court noted that the purpose of the tolling statute is to afford the requisite time and facility for the reasonably diligent prosecution of claims.

More recently, in *Gatliff v. Little Audrey's Transportation Co.*, 317 F. Supp. 1117 (D. Neb. 1970), the court, citing *Blodgett v. Utley*, 4 Neb. 25 (1875), held that the statute of limitations was not tolled by the absence from the state of one who at all times following a motor vehicle collision could have been sued in the state through the provisions of a statute which permitted service of process on nonresident motorists through the Secretary of State and the mailing of notice to the out-of-state motorist.

The *Gatliff* court noted that the purpose of statutes of limitations is to bring an end to the uncertainties of litigation within a reasonable time and that the purpose of tolling statutes is to overcome the effects of a wrongdoer's interference with a claimant's ability to enforce his or her rights. The *Gatliff* court therefore reasoned that to permit the absence of one who could have been sued in the state to toll a period of limitations would be to frustrate the very purpose for which statutes of limitations exist.

Nonetheless, plaintiffs argue that if the Legislature had intended for the long-arm statutes to have modified the tolling statute, it would have included in the long-arm statutes language to that effect. However, the argument overlooks the fact that when the long-arm statutes were enacted, 1967 Neb. Laws, ch. 143, §§ 1-7, pp. 439-40, the tolling statute had already been in existence for a century, Rev. Stat. § 20, p. 396 (1867), and its meaning judicially settled for 92 years. The applicable rule is that when the Legislature enacts a law affecting an area which is already the subject of other statutes, it is presumed that it did so with full knowledge of the preexisting legislation and the decisions of the Supreme Court

construing and applying that legislation. *School Dist. No. 17 and Westside Comm. Schools v. State*, 210 Neb. 762, 316 N.W.2d 767 (1982). Therefore, it must be presumed that the Legislature was aware of the judicial decisions concerning the tolling statute when it enacted the long-arm statutes. Had the Legislature intended for one's mere physical absence to toll the limitations period, contrary to prior judicial interpretation, it could have revised the tolling statute to clearly so provide.

Having determined that the tolling statute does not save plaintiffs' petition, we reach the rule that when a demurrer to a petition is sustained, a court must grant leave to amend the petition unless it is clear that no reasonable possibility exists that amendments will correct the defect. *Association of Commonwealth Claimants v. Moylan, ante* p. 88, 517 N.W.2d 94 (1994).

As plaintiffs have conceded that in the absence of applying the tolling statute each of their causes is time barred, amendments cannot correct the defect in their pleading.

## V. JUDGMENT

Consequently, as noted in part I, the judgment of the district court is affirmed.

AFFIRMED.

FAHRNBRUCH, J., not participating.